FILED
CLERK
2:46 pm, Oct 23, 2017
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
JOSEPH MARCARIO, Individually and on
behalf of all others similarly situated,

                Plaintiff,

      -against-

MIDLAND CREDIT MANAGEMENT, INC.,
and MIDLAND FUNDING, LLC,

                Defendants.
----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-414 (ADS)(ARL)

**APPEARANCES:**

**BARSHAY SANDERS, PLLC**
*Attorneys for the Plaintiff*
100 Garden City Plaza, Suite 500
Garden City, NY 11530
    By:    David M. Barshay, Esq.
              Craig B. Sanders, Esq., Of Counsel

**HINSHAW & CULBERTSON, LLP**
*Attorneys for Defendants*
800 Third Avenue, 13th Floor
New York, NY 10022
    By:    Ellen B. Silverman, Esq.
              Matthew B. Corwin, Esq., Of Counsel

**SPATT, District Judge**:

      The Plaintiff, Joseph Marcario, ("Marcario" or the "Plaintiff") commenced this action against the Defendants, Midland Credit Management, Inc. ("MCM"), and Midland Funding, LLC ("Midland Funding") (collectively "Midland" or the "Defendants") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

1

Presently before the Court is a motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, stay this action and dismiss all class action claims. The Plaintiff opposes the motion. For the following reasons, the motion to compel is granted in its entirety.

## I. BACKGROUND

### A. The Factual Background

On October 29, 2012, the Plaintiff opened a credit card account with Credit One Bank. The first credit card was mailed to the Plaintiff on October 31, 2012.

On November 23, 2012, Credit One Bank mailed to the Plaintiff a new credit card after the Plaintiff reported that the original card was lost or stolen. This credit card had the same credit card account number as the original card.

Both credit cards, which were mailed to the Plaintiff, contained Credit One Bank's "Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement" ("Arbitration Agreement").

According to the Arbitration Agreement, a consumer agreed to the terms of the Arbitration Agreement by using his or her credit card.

The Plaintiff utilized his credit card on multiple occasions. He made his last payment to the credit card account on April 3, 2014. Credit One Bank charged off the account on November 4, 2014 with a balance of $988.52.

In late 2014, the Plaintiff's credit card account was sold to numerous creditors, and was ultimately assigned to Midland Funding. Midland Funding also obtained business records that contain the account history and records of the various accounts it purchased, including the Plaintiff's account. This includes a Bill of Sale and Assignment, Affidavit of Sale and account

statements. MCM services the Plaintiff's credit card account on behalf of Midland Funding, which owns the portfolio of accounts that contains the Plaintiff's credit card account.

On January 26, 2016, MCM mailed the Plaintiff a "Pre-Legal Notification" letter. The letter lists the previous balance as $998.52 and the interest rate at 23.90%. Declaration of Matthew B. Corwin, Ex. A.

## B. The Procedural Background

On January 25, 2017, the Plaintiff commenced this action against the Defendants by filing the complaint.

On May 8, 2017, the Plaintiff filed an amended complaint.

The present motion was filed by the Defendants on June 30, 2017.

## II. DISCUSSION

### A. Legal Standard

"The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011) (internal citation omitted). It exemplifies this country's "strong federal policy favoring arbitration as an alternative means of dispute resolution." *Ragone v. Atl. Video of Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (internal citations omitted); *accord Concepcion*, 563 U.S. at 346; *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 395 (2d Cir. 2015). As a result, "any doubts concerning the scope of the arbitral issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983). The FAA states that "[a] written provision in … a contract … to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.

It "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241, 84 L. Ed. 2d 158 (1985) (emphasis in original). To make the determination of whether arbitration should be compelled, the Court must decide:

(1) whether the parties agreed to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) if federal statutory claims are at issue, whether Congress intended such claims to be non-arbitrable; and (4) if only some of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration.

*Bakon v. Rushmore Serv. Ctr., LLC*, No. 16-cv-6137, 2017 WL 2414639, at *2 (E.D.N.Y. June 2, 2017) (internal citations omitted); *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987).

Here, the Plaintiff is focused on the first determination, whether the Plaintiff and Midland agreed to arbitrate. It is Midland's burden to demonstrate this by a preponderance of the evidence. *See Tellium, Inc. v. Corning Inc.*, No. 03-cv-8487, 2004 WL 307238, at *5 (S.D.N.Y. Feb. 13, 2004); *Crawley v. Macy's Retail Holdings, Inc.*, No. 15-civ.-2228, 2017 WL 2297018, at *4 (S.D.N.Y. May 25, 2017). "[The Court] must place arbitration agreements on an equal footing with other contracts … and enforce them according to their terms." *Concepcion*, 563 U.S. at 333 (internal citations omitted).

As a result, the Court will evaluate the enforceability of the Arbitration Agreement using state contract law. *Cap Gemini Ernst & Young, U.S., LLC v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002) ("The determination of whether parties have contractually bound themselves to arbitrate a dispute – a determination involving interpretation of state law – is a legal conclusion."); *DuBois v. Macy's E. Inc.*, 338 F.

Appx. 32, 33 (2d Cir. 2009) ("Arbitration clauses are a matter of contract law and, if valid, should be enforced."); *State ex rel. Masto v. Second Judicial Dist. Court ex rel. Cty. Of Washoe*, 125 Nev. 37, 44, 199 P.3d 828, 832 (Nev. 2009).

Here, the Arbitration Agreement stipulates that Federal Law as well as Nevada State law apply to any disputes regarding the arbitration provision. There is no conflict between the relevant substantive law of Nevada and New York and so no choice of law analysis is necessary *See McCormick v. Citibank, NA*, No. 15-cv-46, 2016 WL 107911, at *4 (W.D.N.Y. Jan. 8, 2016).

In deciding whether arbitration should be compelled, the Court will apply "a standard similar to that applicable for a motion for summary judgment," *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (internal citations omitted), considering all relevant admissible evidence and drawing all reasonable inferences in favor of the non-moving party. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 227 (2d Cir. 2016) (internal citations omitted).

**B. Admissibility of Affidavits**

Before turning to the substantive issues, the Court notes that the Plaintiff challenged the admissibility of the Defendants' evidence in support of their motion, namely the affidavit and supporting exhibits of Vicki Scott, a Vice Presidents of Collections at Credit One ("Scott Affidavit"). Specifically, the Plaintiff claims that the Scott Affidavit is barred by Rule 803(6) of the Federal Rules of Evidence ("FED. R. EVID.").

The Scott Affidavit asserts that the documents attached to her affidavits were reviewed by her and "were kept in the ordinary course of the regularly conducted business activity…and for which it is the regular practice of that business activity to make such records." She further indicates that the facts stated are based on her review of the records and within her personal knowledge. As she attests in her affidavit, Ms. Scott's job responsibilities, include "review[ing] business records

5

of these entities related to credit card accounts originated by or on behalf of them in the ordinary course of business." The Court finds these assertions are sufficient to satisfy FED. R. EVID. 803(6) and will consider the Scott Affidavit for purposes of deciding the instant motion.

## C. Standing

The Plaintiff further contends that the Defendants do not have standing to compel arbitration under the Arbitration Agreement because the Defendants allegedly failed to demonstrate that they are the true assignees of the Plaintiff's account. "[A]n arbitration clause is generally held to apply to the assignee of a contract." *Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG*, 970 F. Supp. 2d 157, 166 (S.D.N.Y. 2013) (internal citations omitted); *Health Plan of Nevada, Inc. v. Rainbow Med., LLC*, 120 Nev. 689, 691-92, 100 P.3d 172, 174 (Nev. 2004). This must be established by a preponderance of the evidence. *Solar & Envtl. Techs. Corp. v. Zelinger*, 726 F. Supp. 2d 135, 143 (D. Conn. 2009).

The Defendants have submitted multiple sworn affidavits with supporting exhibits that include Bills of Sales, Affidavits of Sale, Assignments, and copies of the electronic records of data to establish assignment of the Plaintiff's account in this case. The Plaintiff did not submit any evidence of his own to respond. For the purpose of enforcing the arbitration agreement, the Defendants have proved, by a preponderance of the evidence, that the title of the Plaintiff's account originated from Credit One Bank and passed to MHC Receivables, LLC, then to FNBM, LLC, subsequently to Sherman Originator III LLC, and finally to Midland Funding. The "chain of custody" was adequately established by the evidence to conclude that the Arbitration Agreement also was so assigned.

The Court notes that the Plaintiff cites an incorrect standard of proof in his opposition memorandum. The New York State cases he cites are not FDCPA cases; they are debt collection

6

cases, where the procedural posture of the parties requires a different standard. This is not the first time a court in this Circuit has noted Plaintiff's counsel's improper citations in this context, *see, e.g.*, *Zambrana v. Pressler & Pressler, LLP*, No. 16-cv-2907, 2016 WL 7046820, at *6 (S.D.N.Y. Dec. 2, 2016) ("Plaintiff, pointing to New York debt collection cases, contends that Defendants have not presented sufficient proof to establish a complete chain of title. This, however, is not a debt collection case; it is an FDCPA case.").

**D. The Arbitration Agreement is Valid and Enforceable**

The Plaintiff contends that the Defendants never entered into the Arbitration Agreement with the Plaintiff. Specifically, he claims that the Defendants (1) failed to present adequate evidence that demonstrates that the Plaintiff entered into the Arbitration Agreement; (2) failed to establish that the Agreement was ever sent to the Plaintiff; and (3) failed to submit the original Arbitration Agreement.

The Arbitration Agreement states that, "You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration." Memorandum of Law in Support of Defendants' Motion to Compel Arbitration and Dismiss Class Claims at 4. It then continues, defining "Claims" as "include[d] but … not limited to … collections matters relating to your account." *Id*. Such a broad arbitration clause "[creates] a presumption of arbitrability and arbitration [that] even a collateral mater will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (internal citations and quotations omitted).

The Plaintiff's argument that the Defendants have not established that the Plaintiff entered into the Arbitration Agreement is fatally flawed for a number of reasons. First, the Plaintiff's admissions in his amended complaint constitute judicial admissions to this Court and he is therefore bound by these statements throughout the action. *See Official Comm. Of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand. LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (internal citations omitted). As Marcario pleads in his amended complaint, "[his] debt was assigned or otherwise transferred to Defendants for collection." The Plaintiff is bound by this statement.

Marcario further contends that the Scott Affidavit provides insufficient detail to establish the required underlying facts. Specifically, he claims that the Defendants have not established that the Plaintiff agreed to open the account. This dispute is irrelevant because the Plaintiff already admits in the amended complaint that he used the credit card "for personal, family or household purposes." Amended Complaint ¶ 12. Nevada and New York State law agree that the use of a credit card constitutes evidence of acceptance to the terms of the credit card account agreement. *See McCormick*, 2016 WL 107911, at *4; Nev. Rev. Stat. Ann. § 97A.140 ("A cardholder shall be deemed to have accepted the written terms and conditions provided by the issuer upon subsequent actual use of the credit card.").

This judicial admission by the Plaintiff in his amended complaint constitutes sufficient evidence that the Plaintiff was issued a credit card and used it, thereby assenting to the Arbitration Agreement. However, even if the Plaintiff did not already plead such details in the amended complaint, the contention that the Scott Affidavit provides insufficient detail is incorrect. The Court finds that the Scott Affidavit, as well as additional uncontested evidence submitted by the

Defendants, contain ample detail to establish the existence of the Arbitration Agreement. *See, e.g.*, Scott Affidavit ¶¶ 5-8; Supplemental Affidavit of Gary Harwood ¶ 6.

Second, the Plaintiff claims that there is insufficient evidence that the Arbitration Agreement was ever sent to the Plaintiff. The Court disagrees. Courts in this circuit have found that there is a presumption of receipt when evidence is provided that described an office's standard mailing procedures. *See Zambrana*, 2016 WL 7046820, at *4 (collecting cases). Contrary to the Plaintiff's contentions, there is no requirement that the Defendants produce a witness with first-hand knowledge of whether the Arbitration Agreement was mailed to the Plaintiff. *See SEC v. Espuelas*, 905 F. Supp. 2d 522 n.6 (S.D.N.Y. 2012). The Defendants provide uncontested evidence not only of the Defendants' standard mailing procedures, but that the Plaintiff received the Arbitration Agreement in the mail contemporaneously with his credit card. *See, e.g.*, Scott Affidavit ¶ 5 ("The replacement card was mailed to Joseph Marcario at his address at 625 11th Street, Vero Beach, Florida 32960. Enclosed with both credit cards was Credit One Bank's [Arbitration Agreement] for the account."). The Defendants have met their burden to establish that the Plaintiff received and thus is bound by the Arbitration Agreement.

Finally, the Plaintiff contends that the Defendants' reliance on an "exemplar agreement" is inadequate to demonstrate that an agreement existed and that the terms contained in the Arbitration Agreement are those that the Plaintiff agreed to when he opened his account. The FAA does not require the Defendants to produce a signed copy of the Arbitration Agreement. *See Genesco, Inc.*, 815 F.2d at 846. The Defendants have presented a 2014 "exemplar agreement," as well as multiple affidavits that attest that this sample agreement contained the same terms and conditions that governed the Plaintiff's account when the account was active. *See, e.g.*, Supplemental Harwood Affidavit ¶ 7. The Plaintiff has not provided any evidence to contradict the Defendants'

declarations. Therefore, the Court holds that the Defendants have provided sufficient evidence to conclude that the "exemplar agreement" is a true and correct copy of the Arbitration Agreement to which the Plaintiff agreed. *See Bakon v. Rushmore Service Center, LLC*, No. 16-cv-6137, 2017 WL 2414639, at *3 (E.D.N.Y. June 2, 2017) ("The Court is satisfied that the agreement [the defendant] has offered is a true copy of the actual Agreement that was sent to [the plaintiff] in October 2014." (internal citations omitted)).

As the Court outlined in Section II.C., the Defendants have adequately established that the Plaintiff's credit card account was assigned to them and they can thus enforce the Arbitration Agreement as assignees.

**E. This Case is Within the Scope of the Arbitration Agreement**

The Court finds that this case clearly falls within the scope of the Arbitration Agreement. The relevant provision defines "Claims," which according to the Arbitration Agreement may be submitted to mandatory, binding arbitration by either party, as including "collections matters relating to your account." Unquestionably, the Plaintiff's FDCPA claims arise out of the Defendants' attempts to collect the Plaintiff's credit card account debt. In his briefing, the Plaintiff has not advanced any arguments to the contrary. Therefore, the Plaintiff's individual FDCPA claim clearly falls well within the scope of the Arbitration Agreement.

**F. Dismissal of the Class Claims**

The Court's conclusion that the Arbitration Agreement is valid and enforceable compels this Court to dismiss the Plaintiff's class-wide claims. The Plaintiff expressly waived his right to pursue his FDCPA claim on a class-wide basis as a class representative or member of the class. The Arbitration Agreement states, in relevant part, "[i]f you or we require arbitration of a particular Claim, neither you, we, nor any other person may pursue the Claim in any litigation, whether as a

10

class action, private attorney general action, other representative action or otherwise." Reply Memorandum of Law in Further Support of Defendants' Motion to Compel Arbitration and Dismiss Class Claims at 15. Such class action waivers have recently been upheld by the Supreme Court. *See Concepcion*, 563 U.S. at 352; *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2312, 186 L. Ed. 2d 417 (2013); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 471, 193 L. Ed. 2d 365 (2015). This Court is bound to follow this recent precedent.

### III.  CONCLUSION

For the reasons stated above, the Defendants' motion to compel arbitration and dismiss class claims is granted in its entirety. Accordingly, the Court compels the Plaintiff to arbitrate his remaining individual claim pursuant to the terms set forth in the Arbitration Agreement. The case will remain stayed pending the resolution of arbitration.

It is **SO ORDERED**:

Dated: Central Islip, New York

October 23, 2017

　　　　　　　　　　　　　　　　　　　___/s/ Arthur D. Spatt___

　　　　　　　　　　　　　　　　　　　ARTHUR D. SPATT

　　　　　　　　　　　　　　　　　　　United States District Judge